UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELO L. FALCON,

        **Plaintiff,**

        v.                                           5:12-CV-1164
                                                                   (FJS)

**CAROLYN W. COLVIN**, Acting
**Commissioner of Social Security,**

        **Defendant.**
_____

**APPEARANCES**                             **OF COUNSEL**

**OFFICE OF PETER W. ANTONOWICZ**     **PETER W. ANTONOWICZ, ESQ.**
148 West Dominick Street
Rome, New York 13440
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **ANDREEA L. LECHLEITNER, ESQ.**
**OFFICE OF REGIONAL GENERAL**
**COUNSEL, REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 13-14.

### II. BACKGROUND

On September 27, 2010, Plaintiff filed an application for Social Security Disability Benefits ("DIB") pursuant to §§ 216(i) and 223 of the Social Security Act (the "Act"), as amended, §§ 42 U.S.C. 416(i) and 423. *See* Dkt. No. 1 at ¶ 4. On December 17, 2010, Plaintiff's DIB claim was denied. *See id.* On January 26, 2011, Plaintiff timely requested a

hearing. *See id.* at ¶ 5. On July 28, 2011, Administrative Law Judge ("ALJ") Barry E. Ryan held a hearing in Utica, New York. *See id.* at ¶ 6. Plaintiff appeared and testified at the hearing without counsel. On August 15, 2011, the ALJ, after considering the case *de novo*, denied Plaintiff's disability claim. *See* Dkt. No. 13 at 2. The ALJ made the following findings:

1. Plaintiff had met "the insured status requirements of the Social Security Act through December 31, 2014."

2. Plaintiff had "not engaged in substantial gainful activity since March 23, 2009, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*)."

3. Plaintiff had "the following severe impairments: HIV+, herpes genitalis (anal and genital), cirrhotic liver, history of colon cancer and adjustment disorder with mixed features (apparently secondary to his physical impairments and limitations) (20 C.F.R. § 404.1520(c))."

4. Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)."

5. Plaintiff had "the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). He can lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours and walk and sit for 6 hours each, all in an 8-hour workday. There are no mental work limitations."

6. Plaintiff was "unable to perform any past relevant work (20 C.F.R. § 404.1565)."

7. Plaintiff "was born on August 26, 1967, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563)."

8. Plaintiff "has a limited education and is able to communicate in English (20 C.F.R. § 404.1564)."

9. Transferability of job skills was "not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. § 404.1568)."

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there were "jobs that exist in significant numbers in the

> national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 404.1569(a))."
>
> 11. Plaintiff had "not been under a disability, as defined in the Social Security Act, from March 23, 2009, through the date of this decision, August 15, 2011 (20 C.F.R. § 404.1520(g))."

*See* Dkt. No. 10-2 at 22-29.

Plaintiff appealed the ALJ's decision to the Appeals Council. As part of his appeal, Plaintiff submitted additional evidence to the Appeals Council for its review. *See* Dkt. No. 13 at 4. Specifically, Plaintiff submitted additional evidence regarding his residual functional capacity ("RFC"): (1) HIV-AIDS RFC (dated December 5, 2011), and (2) Hepatitis C RFC, submitted on December 15, 2011 and January 17, 2012. *See id.* at 4-5. Nurse Practitioner ("N.P.") Theresa Feola, who works in the Infectious Disease Clinic at Upstate University Hospital in Syracuse, New York, prepared these reports. *See id.* at 5-6. Dr. David Paar, a disease-treating specialist also at the Upstate Infectious Disease clinic, co-signed these RFCs. *See id.* at 10, 12-14; *see* Dkt. No. 10-8 at 236, 239, 250, 256. Plaintiff asserts that this new information supports a finding that he is disabled. *See* Dkt. No. 10-6 at 42. On July 6, 2012, the Appeals Council advised Plaintiff that there would be no further review of the ALJ's decision. *See* Dkt. No. 1 at ¶ 8. Therefore, the ALJ's determination became the "final decision of the Commissioner of Social Security" in Plaintiff's case. *See* Dkt. No. 1-1 at 1; *see* Dkt. No. 10-2 at 2.

On July 19, 2012, Plaintiff filed his complaint in this Court, pursuant to 42 U.S.C. § 405(g) of the Act. *See* Dkt. No. 1 at ¶ 3. In support of his motion for judgment on the pleadings, Plaintiff argued that (1) the ALJ erred in failing to find that his Hepatitis C was a severe medical impairment; (2) the ALJ erred in his determination of Plaintiff's RFC; and (3) the ALJ improperly evaluated his credibility and allegations of disabling pain and fatigue.

# I. DISCUSSION

## A. Standard of Review

### *1. Substantial evidence*

When reviewing the Commissioner's final decision, the district court may set aside the Commissioner's non-disability determination "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *see also Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (stating that the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision" (citation omitted)). The court's factual review of the Commissioner's decision is limited to whether substantial evidence in the record supports the decision. *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quotation omitted). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). An ALJ must also set forth the crucial factors justifying his findings with sufficient specificity to allow the court to determine whether substantial evidence supports the decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). A court, however, "cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's

4

decision." *Scott v. Comm'r of Soc. Sec.*, No. 06-CV-481, 2009 WL 1559819, *2 (N.D.N.Y. June 2, 2009) (citation omitted).

However, the district court may not affirm an ALJ's disability determination if it reasonably doubts whether the ALJ applied the proper legal standards, even if it appears that substantial evidence supports that determination. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quotation omitted); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "'Failure to apply the correct legal standards is grounds for reversal.'" *Pollard*, 377 F.3d at 189 (quotation omitted).

### *2. Five-step determination of disability*

To be eligible for DIB, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). In addition, a claimant's

> [p]hysical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In evaluating DIB claims, the ALJ follows a five-step sequential process:

> First, the [ALJ] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [ALJ] next

5

> considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant
> has an impairment which is listed in Appendix 1 of the regulations.
> If the claimant has such an impairment, the [ALJ] will consider
> him disabled without considering vocational factors such as age,
> education, and work experience[.] . . . Assuming the claimant does
> not have a listed impairment, the fourth inquiry is whether despite
> the claimant's severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the claimant is
> unable to perform his past work, the [ALJ] then determines
> whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

"[T]he claimant bears the burden of proving disability at the first four steps." *Berry*, 675 F.2d at 467. If the claimant meets his burden, then the Commissioner has the burden of proof at the fifth step. *See id.*

## A. Whether the ALJ erred when he found that Plaintiff's Hepatitis C was not a severe impairment

Section 416.920(c) of Title 20 of the Code of Federal Regulations provides that "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 416.920(c). For purposes of the Act, a "severe impairment" is statutorily defined in Appendix 1. *See* 20 C.F.R. § 416.920(d). Plaintiff argues that the ALJ erred when he failed to find that his Hepatitis C was a severe impairment at Step 2 of the evaluative process. At step two, the ALJ found that Plaintiff had the following severe impairments: HIV+, herpes genitalis (anal and genital), cirrhotic liver, history of colon cancer and adjustment disorder with mixed features (apparently secondary to his physical impairments and limitations). *See* Dkt. No. 10-2 at 22-29.

The ALJ then proceeded through the sequential evaluation process, considering both Plaintiff's severe and non-severe impairments. *See id.* The ALJ addressed Plaintiff's Hepatitis C diagnosis six times. *See* Dkt. No. 10 at 23-25. On April 15, 2010, Dr. Waleed Javaid wanted to start treatment for Plaintiff's Hepatitis C. *See id.* at 23. On November 1, 2010, at Upstate University Hospital, Dr. Brian D. Johnson diagnosed Plaintiff with Hepatitis C. *See id.* On November 23, 2010, Dr. Roberto Rivera examined Plaintiff for the SSA. *See id.* at 24. At that time, Dr. Rivera diagnosed Plaintiff with Hepatitis C. *See id.* On January 11, 2011, during an evaluation of chronic testicular pain, Dr. Matthew G. Glidden stated that Plaintiff's Hepatitis C was stable. *See id.* at 24. On January 13, 2011, N.P. Feola saw Plaintiff to discuss Hepatitis C treatment. *See id.* Lastly, on June 30, 2011, Plaintiff had a follow-up with Dr. Javaid for his Hepatitis C, for which he had been on interferon and ribavirin treatment since January, with adjusted doses of medication. *See id.* at 25.

There is nothing in the record to indicate the ALJ dismissed or failed to consider the diagnosis and treatment of Plaintiff's Hepatitis C. Thus, even if the ALJ erred in finding that Plaintiff's Hepatitis C was not a severe impairment, any such error was harmless. *See Paquette v. Colvin*, No. 7:12-CV-1470, 2014 WL 636343, *5 (N.D.N.Y. Feb. 18, 2014) (citations omitted).

**B. Whether there was substantial evidence in the record to support the ALJ's RFC determination**

As previously stated, substantial evidence means "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quotation omitted). So long as the ALJ properly exercises his discretion, the court must limit its review to whether substantial evidence

supports the ALJ's decision; the court may not second-guess the ALJ's balancing of the evidence. *See Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted). The crucial factors in an ALJ's determination "must be set forth with sufficient specificity" to enable a court "to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted). However, the court does "not require that [the ALJ] . . . mention[] every item of testimony presented to him or . . . explain[] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (citation omitted).

The ALJ must consider the individual's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis. *See* SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). In other words, the ALJ must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. *See* 20 C.F.R. §§ 416.913(c)(1); 416.969a(a); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citations omitted). The ALJ can express the claimant's RFC in terms of the exertional levels of work -- sedentary, light, medium, heavy, and very heavy -- only after he has completed the function-by-function analysis. *See Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.)).

The regulations outline the physical exertion requirements, explaining that, "[t]o determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 416.967. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up

to 10 pounds." 20 C.F.R. § 416.967(b). Further, "a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

Here, there was substantial evidence in Plaintiff's medical record to support the ALJ's decision. Plaintiff admitted that "[h]e could lift 20 pounds at most and 10 pounds on a regular basis, but cramps up pushing and pulling things." *See* Dkt. No. 10-2 at 28, 69. Indeed, Plaintiff's own statements are inconsistent with his disability claim, including his statements about his daily chores and extracurricular activities. *See* Dkt. No. 10-6 at 15-17. Second, the ALJ found that the medical assessments of Dr. Noia and Dr. Rivera were "consistent with objective medical evidence and the longitudinal record of medical care." *See* Dkt. No. 10-2 at 28. Dr. Noia stated that Plaintiff "appears to be capable of performing simple and some complex tasks with supervision and independently." *See* Dkt. No. 10-7 at 213; *see* Exhibit "7F." Dr. Rivera found that Plaintiff had no limitations to sitting or standing, and moderate limitations to lifting, carrying, pushing, and pulling. *See id.* at 219; *see* Exhibit "8F." Dr. Tzetzo's assessment was also consistent with the medical evidence and the history of care. *See id.* at 242-245; *see* Exhibit "12F."

For the above-stated reasons, the Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff had the RFC to perform light work.

**C. Whether the Appeals Council erred in not considering Dr. Paar's and N.P. Feola's opinions**

Section 404.970 explicitly details when the Appeals Council will review cases.

(a) The Appeals Council will review a case if –

(1) There appears to be an abuse of discretion by the administrative law judge;
(2) There is an error of law;

9

> (3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
> (4) There is a broad policy or procedural issue that may affect the general public interest.

20 C.F.R. § 404.970(a).

> This regulation further outlines how the AC considers "new and material evidence." If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

A claimant may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). To warrant review of the "new and material evidence," the claimant must establish that "'the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.'" *Sergenton v. Barnhart*, 470 F. Supp. 2d 194, 204 (E.D.N.Y. 2007) (quoting *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991)). Evidence is "material" if there is "'a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently.'" *Id.* (quotation omitted).

As a preliminary matter, it is clear that the ALJ could not consider medical assessments and RFC questionnaires that were not before him. The evaluations that Plaintiff submitted to the Appeals Council were completed after the ALJ issued his decision and did not refer to the

relevant period of alleged disability. This new evidence, which is dated December 5, 2011 (Medical Assessment (HIV/AIDS)) and December 30, 2011 (Hepatitis C Residual Functional Capacity Questionnaire), *see* Dkt. No. 10-8 at 231-36, 249-50, does not address Plaintiff's conditions from March 23, 2009, to August 15, 2011, the relevant time period of disability. *See* Dkt. No. 14 at 14. In order for the Appeals Council to review a new diagnostic or consultative medical assessment, it must relate specifically to the period of alleged disability. *See* 20 C.F.R. § 404.970(b). Dr. Paar's opinions, dated December 5, 2011, and December 30, 2011, do not meet this condition. Therefore, the Court finds that the Appeals Council did not err by not considering this new evidence because it falls outside of the relevant window of alleged disability.

However, the Appeals Council could have considered N.P. Feola's opinions that referred to the relevant time period of alleged disability. However, N.P. Feola is not a physician and, therefore, is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1527(a)(2), 404.1513(a). A Nurse Practitioner is recognized as an "other source" who can supply the ALJ and the Appeals Council with material evidence. Section 404.1513(d) states, in pertinent part, that

> [i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to – (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists) . . .

20 C.F.R. § 404.1513(d).

Thus, N.P. Feola's opinion can be counted as "other source" evidence to demonstrate the severity of Plaintiff's impairment. The first report is an "Outpatient Visit Report," dated April 13, 2011. *See* Dkt. No. 10-8 at 13. In that report, N.P. Feola stated that Plaintiff was on

11

"Copegus and Pegasys for his hepatitis C." *See id.* N.P. Feola noted that Plaintiff was "awake, alert and oriented" and that "his gait was steady." *See id.* N.P. Feola provided her impressions of Plaintiff: (1) HIV with well-controlled viral load, CD-4 count is dropping though since Hepatitis C treatment was started; (2) Hepatitis C; and (3) fatigue and anemia. *See id.*

The second report is a previous "Outpatient Visit Report," dated January 13, 2011, where N.P. Feola stated that Plaintiff "frequents the ER and doctor's offices complaining of different types of pain including abdomen, back, body aches, chest pain. He has had multiple workups [sic] nothing r [sic] have never shown any significant disease that would cause him pain. This was one of the concerns we voiced to him today." *See* Dkt. No. 10-8 at 15.

In her report, N.P. Feola echoed a concern that some doctors had voiced regarding Plaintiff's proclivity to magnify symptoms. *See* Dkt. No. 14 at 17; *see* Dkt. No. 10-8 at 70, 73, 89. Moreover, neither of N.P. Feola's reports indicates that Plaintiff's Hepatitis C further impaired him. Specifically, the April 13, 2011 report shows that Plaintiff was attentive. *See* Dkt. No. 10-8 at 13. Outside of fatigue and anemia, his HIV diagnosis was responding well to his treatment for Hepatitis C. *See id.* Second, in her report dated January 13, 2011, N.P. Feola indicates that Plaintiff is prone to manufacture symptoms that are inconsistent with certain diagnostic tests and his overall medical history. *See* Dkt. No. 14 at 17. These reports do not contradict the aforementioned physicians' assessments about Plaintiff's RFC.[1] Therefore, these reports are not "material" in that they would not persuade the Commissioner to decide Plaintiff's DIB claim differently. *See Sergenton*, 470 F. Supp. 2d at 204. These reports are also not "new" because they are "merely cumulative of what is already in the record." *See id.*

---

[1] To the extent that Plaintiff argues, relying upon *Shaw v. Carter*, 221 F.3d 126 (2d Cir. 2000), that the "treating physician rule" applies to the evaluative reports of Dr. Paar, this rule is not applicable because these reports do not address the relevant time period.

12

Accordingly, for the above-stated reasons, the Court finds that neither the ALJ nor the Appeals Council erred in not relying on these reports of Dr. Paar and N.P. Feola.

## A. Whether the ALJ correctly assessed Plaintiff's credibility

"'An [ALJ] may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility[.]'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quotation omitted). The ALJ, however, must present the reasons for his credibility determination ""with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence."" *Id.* (quotation omitted). Reviewing courts should afford deference to an ALJ's credibility determination because he heard the testimony and observed the witnesses' demeanor. *See Cohn o/b/o R.Y. v. Astrue*, No. 10-CV-214, 2012 WL 1068824, *5 (N.D.N.Y. Mar. 29, 2012) (noting that "[t]he ALJ's decision to discount Plaintiff's statements of symptoms must be accepted by a reviewing court unless it is clearly erroneous" (citation omitted)); *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (stating that, if substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints of pain, then the court must uphold that decision (citations omitted)).

To satisfy the substantial evidence rule in determining the claimant's credibility, the ALJ follows a two-step analysis of the pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c). First, the ALJ must determine, based on the claimant's objective medical evidence, whether the claimant's impairments "could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms

13

to determine the extent to which they limit the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). When the objective evidence does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the claimant's credibility by considering the record in light of the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment that the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ followed the two-step process. First, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *See* Dkt. No. 10-2 at 28. Second, he determined that, although Plaintiff's work history enhanced his credibility, "his allegations and sworn testimony are not supported by objective medical evidence and by expert medical opinions and assessments." *See id.* Further, when the ALJ asked Plaintiff specific questions about his ability to stand, walk, sit, and lift, Plaintiff testified to abilities that matched the requirements to perform light work. *See* Dkt. No. 10-2 at 68-69. In addition to Plaintiff's own testimony, the ALJ found that Plaintiff engaged in numerous household chores and even outdoor activities that undercut his allegation of disability. *See* Dkt. No. 10-6 at 14-17. Lastly, the ALJ, in reviewing the record, considered numerous concerns about "symptom magnification and drug-seeking behavior." *See* Dkt. No. 14 at 20.

Specifically, during an exam on January 11, 2011, at Upstate University Hospital, Dr. Glidden stated,

> [Plaintiff] has been seen in our Emergency Department multiple times. Even just since November 2010, he has had multiple visits. They are all with nonspecific findings and clear etiology to his symptoms. His last visit was December 18. At that time he complained of abdominal pain. His workup was negative . . . The Emergency Department has also appeared to have labeled him at times with narcotic-seeking behavior.

*See* Dkt. No. 10-8 at 26.

Based on the record as a whole, the ALJ determined that Plaintiff's subjective complaints were not supported by the objective medical evidence and the expert medical assessments and opinions. There is substantial evidence in the record to support the ALJ's finding that Plaintiff was not totally credible. Therefore, the Court finds that the ALJ appropriately assessed Plaintiff's credibility.

## I.CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**, and Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED**

Dated:     March 31, 2014
            Syracuse, New York                     Frederick J. Scullin, Jr.
                                                                 Senior U.S. District Judge